## LOSQUADRO v. HUDSON CONSUMERS' ICE CO.

(Circuit Court of Appeals, Third Circuit. February 21, 1921.)

No. 2573.

1. Sales ⬥85(2)—Interruption of deliveries within terms of contract.

Where a contract by defendant to supply plaintiff with artificial ice provided that it should be relieved from deliveries in case of "any conditions brought on by war impairing or disarranging the working schedule of the plant," plaintiff held not entitled to damages because of higher prices paid during the time the plant was shut down owing to war orders.

2. Sales ⬥182(1)—Termination of contract question for jury.

Where a contract for the furnishing of artificial ice by defendant to plaintiff for a fixed term at a stated price provided that it should be suspended during any time war conditions should impair or disarrange the working schedule of defendant's plant, whether war conditions which caused the closing down of the plant for a time were such an impairment or disarrangement throughout the term of the contract as relieved defend-

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant from further deliveries, or whether the contract was terminated by the receiving of ice by plaintiff at a higher price after operation was resumed, *held* questions for the jury.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action at law by Vito Losquadro against the Hudson Consumers' Ice Company. From the judgment, plaintiff brings error. Reversed.

Lionel P. Kristeller, of Newark, N. J., for plaintiff in error.

Arthur J. Westermayr, of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Hudson Consumers' Ice Company, an ice manufacturer of New Jersey, engaged to sell Losquadro, a retail dealer in New York, artificial ice in given quantities at named prices for a prescribed period. The contract relieved the Ice Company from deliveries in the event "that an embargo or shortage of coal occur, or any conditions brought on by war impairing or disarranging the working schedule of the plant," and permitted Losquadro to purchase ice from any other concern "until the resumption of business by the" Ice Company.

Both parties proceeded under the contract until the United States Food Administration, conserving war resources, contracted with the Ice Company with reference to its allotment of ammonia for the year 1918, and until the Ice Comptroller of the State of New York, by order of April 12, 1918, made under authority to regulate the production, marketing and sale of ice within the State of New York, stopped the Ice Company's deliveries in that State.

The effect of this order was to force the Ice Company to shut down its plant. It then arranged with the Knickerbocker Ice Company of New York to supply Losquadro with natural ice in the amount called for by the contract, but at a price fixed by the Ice Comptroller, which was higher than the contract price for artificial ice. Pursuant to this arrangement, Losquadro for a month or more obtained ice from the Knickerbocker Ice Company but made payments to Hudson Consumers' Ice Company.

Upon the withdrawal of the Ice Comptroller's order on June 1, 1918, the Ice Company resumed the manufacture of ice and notified Losquadro that he could get artificial ice at its plant. In response Losquadro inquired the price and on being informed that it would be 45 cents per cake (the contract price being 37½ cents per cake) Losquadro took several loads. Upon receiving a bill at the higher rate at the end of a week he refused payment and the Ice Company declined longer to supply him with ice at the contract price. Whereupon Losquadro brought this suit, seeking damages, first, for the difference between the contract price of ice and the price fixed by the Ice Comptroller and paid by him during the period in which the defendant's works were closed; and second, for loss resulting from the Ice Company's refusal, after resumption of operation, to furnish him ice at the contract price for the remainder of the term of the contract,

which ended October 31, 1918. The court entered what was in effect a judgment of non-suit, except that, after deducting a debit against the plaintiff for ice deliveries from a credit in his favor for money he had deposited with the defendant on entering into the contract, it entered judgment for the plaintiff for the balance. Though the judgment was to this extent in his favor, the plaintiff brought this writ of error.

Regarding the judgment as one of non-suit, it was based evidently on the court's opinion that the contract had been terminated either by the action of the United States Food Administrator or of the Ice Comptroller of New York, or by the plaintiff's acceptance of the defendant's ice deliveries on the resumption of operations at a price higher than that named in the contract. We are constrained to find that the court fell into error in holding, as a matter of law, that the contract was ended for any one of these reasons.

[1, 2] The transaction between the defendant and the United States Food Administration concerned the supply of ammonia. Whether the supply of ammonia thus regulated and whether also a claimed shortage of coal—conditions admittedly brought on by war—were such as did not excuse the defendant, or were such as impaired and disarranged, *throughout the term of the contract*, the working schedule of the plant in a manner and to the extent that relieved the defendant of liability for failure to make deliveries, as provided by the sixth paragraph of the contract, were, we think, questions of fact for the jury. If, on the submission of these issues, the finding of the jury had been in favor of the defendant, obviously the contract would have been ended. If, however, its findings had been against the defendant, then the court should have instructed the jury, contingent on such finding, that, as a matter of law, the contract was not terminated by the action of either governmental agency, but that the order of the Ice Comptroller of the State of New York against deliveries of artificial ice in that State operated merely to suspend the contract and that, accordingly, the withdrawal of the order operated to restore it in full force. It follows in such case that the plaintiff would have no valid claim against the defendant for the difference in price which he was compelled to pay during the suspension of the contract, unless, as he claims, the defendant promised to pay it. If there was evidence of such promise based on a valid consideration, this matter also was for the jury.

We come to the transaction of the parties arising early in June immediately after the defendant's resumption of the manufacture of ice and the restoration of the contract.

We gather that the learned trial judge regarded this transaction— embracing correspondence concerning the renewal of artificial ice deliveries, inquiry as to price, information that it would be higher, followed by deliveries—put an end to the contract by mutual consent. But we feel that under the circumstances he should not have determined this as a matter of law, for it involved several tryable questions, namely, whether, in the confusion of price changes arising out of governmental orders, the plaintiff in making the inquiry had in

mind the price of ice under the contract or the price of ice as fixed by the agencies whose actions had but lately controlled him, that is, whether the plaintiff's subsequent hauling of several loads of ice indicated his acquiescence in the newly quoted price and the meeting of his mind with that of the defendant in the annulment of the contract. Still again there was the question, whether the defendant itself had breached the contract, thus revived after its suspension, by quoting another price and declining further to deliver ice at the contract price. On these issues at least, we think the case should have been submitted to the jury under the very positive instruction however, that the plaintiff had no claim for damages sustained during and in consequence of the suspension of the contract, due admittedly to a "condition brought on by war," which did not, within the terms of the contract, merely impair or disarrange the working schedule of the defendant's plant, but stopped it altogether for a time.

Therefore we direct that the judgment below be reversed, and that a new trial be awarded if an amended complaint, eliminating a claim for damages resulting from the compulsory suspension of the defendant's operation, shows damages in a jurisdictional amount.